Filed 8/24/22  P. v. Stevens CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FRANK STEVENS,<br><br>    Defendant and Appellant. | B309444<br><br>(Los Angeles County<br>Super. Ct. No. A902629) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Nicole C. Bershon, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Following a hearing conducted pursuant to Penal Code section 1172.6, subdivision (d) (former section 1170.95),[1] the trial court denied defendant Frank Stevens's resentencing petition based on a factual summary from an appellate opinion.[2] On appeal, defendant contends that the court erred in relying solely on the appellate opinion and that there was insufficient evidence to support the court's findings. Because any error in relying on the opinion was harmless, we affirm.

# II. FACTUAL BACKGROUND[3]

Cafeteria owner Ronald Ross customarily carried large amounts of cash from home to work on Fridays. He also regularly picked up his employee, George Chapman, on his way to work at 4:45 a.m. near the intersection of 90th Street and

---

[1]    Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). All further statutory references are to the Penal Code unless otherwise stated.

[2]    The trial court relied on the factual statement from the unpublished opinion in the direct appeal from defendant's judgment of conviction, *People v. Stevens* (Feb. 4, 1985, B004310) [nonpub. opn.] (the appellate opinion).

[3]    As we discuss below, the parties do not dispute that the facts as recited in the appellate opinion accurately reflect the facts in the trial record from that appeal. The factual background therefore is taken from that opinion and our review of the trial record, of which we take judicial notice.

Vermont Avenue.  Eric Tripp—a disgruntled former employee of the cafeteria and the half-brother of victim Chapman—was aware of these habits.

About a week before the murder, defendant met with Kevin Douchette, who asked defendant if he wanted to make some "'money moves,'" which defendant understood to mean "[p]ullin' a robbery or somethin'."  Defendant responded that he did; and he and Douchette later met with Tripp who explained how they could rob the victims the next morning of a large amount of cash.  Tripp also cautioned that victim Ross may have shotguns in his truck, but assured defendant and Douchette that he would be scared and give up the money.  And, Tripp told them that his half-brother had "snitched on him" and therefore if defendant and Douchette had to "beat his brother up" or "[they] c[a]me to a point where his brother started to be a hero . . . [Tripp didn't] care what [they did] with his brother."  Defendant, who had carjacked a vehicle from its owner the night before, agreed to drive, accompanied by Douchette who would be armed with a handgun.

The next morning, defendant drove Douchette to the intersection of 90th and Vermont where they waited for victim Ross to arrive for the 4:45 a.m. pick up.  They saw victim Chapman standing on the sidewalk as victim Ross's truck stopped to pick him up.  At that point, defendant maneuvered the stolen car in front of the truck, blocking its path forward, and Douchette got out with the handgun and demanded money.  Victim Ross attempted to escape by reversing his truck, but it stalled, and Douchette fired four or five rounds into the cab, wounding victim Ross and killing victim Chapman.  On Douchette's renewed demand, victim Ross gave him $6,500, as defendant backed up the stolen car to be parallel with the truck.

3

Defendant directed Douchette to take victim Ross's shotgun. The men then fled the scene with the money and shotgun and later split the robbery proceeds. (*People v. Stevens, supra*, B004310.)

## III.   PROCEDURAL BACKGROUND

Following a bench trial, the trial court found defendant guilty on count 1 of the first degree murder; on count 3 of robbery; and on count 4 of the robbery of the owner of the stolen car. But the court found untrue the special circumstances allegation that the murder was committed in the course of a robbery under section 190.2, subdivision (a)(17), as the court was not persuaded that defendant acted with the intent to kill. The court sentenced defendant to an aggregate term of 30 years to life, comprised of an upper term five-year sentence for robbery and a consecutive term of 25 years to life for the murder.

Defendant appealed from the judgment of conviction, arguing that his confession should have been suppressed as involuntary and that his prison sentence was constitutionally excessive. On February 4, 1985, the Court of Appeal filed the appellate opinion in which it rejected both contentions and affirmed the judgment.

On December 23, 2019, defendant filed a petition for resentencing under section 1172.6 (former section 1170.95), arguing that (1) he was not the actual killer; (2) he did not, with the intent to kill, aid and abet the actual killer; and (3) he was not a major participant in the felony and did not act with reckless indifference to human life during the felony.

On May 15, 2020, the prosecution filed a response to the petition that attached a copy of the appellate opinion. Neither

4

the prosecution nor the defendant appear to have submitted the underlying trial record. Citing to facts that were "derived directly from the appellate opinion affirming [defendant's] conviction," the prosecution argued that defendant was not entitled to relief because he was a major participant in the robbery and he acted with reckless indifference to human life during the commission of that crime.

On June 12, 2020, defendant filed a reply, arguing that the issue of whether defendant was a major participant who acted with reckless indifference for human life had not been adjudicated in defendant's trial and that it "would thwart the intent of . . . [former] section 1170.95" to make those findings based on "five paragraphs of factual summation from the [appellate opinion]" and without allowing the parties "to argue over the state of the evidence . . . ." The reply included two citations to a reporter's transcript, presumably of defendant's bench trial.

On September 14, 2020, the trial court held an initial hearing on the petition. The court noted that it had a copy of the appellate opinion and inquired whether it would be receiving "a record or disk or anything in this case?" The prosecutor responded, "If the court would like one I could provide [one to] the court. . . . I have the Attorney General file. If the court is asking for it and it's okay with [defense counsel] I can provide the court a copy of it, the record, the [Attorney General] file." Later in the hearing, the court confirmed that it did not "have [the] record other than the appellate decision." Following argument, the court issued an order to show cause and set the matter for an evidentiary hearing.

Prior to the November 13, 2020, hearing, neither side filed any further submissions in support of or opposition to the petition. At the hearing, the trial court and parties agreed that the issue for the court to determine was whether defendant was a major participant in the target robbery who acted with reckless disregard for human life. During the initial arguments of the parties, defendant's counsel referenced the trial record, stating that he did not "believe, based upon the [trial record] that we have, that the People can prove beyond a reasonable doubt that [defendant] acted with a reckless indifference to human life."

The trial court then observed, "I think in this particular case what is most telling is actually the language of the [appellate] opinion. Even though [the appellate court] didn't look at reckless indifference and interpret it in a way using the criteria that we are using now, [it] certainly . . . gave me much guidance in . . . coming to this conclusion . . . ." Citing to portions of the opinion that analyzed defendant's participation in the planning and execution of the robbery, the court explained, "I think the Court of Appeal in this case [was] very clear. [It did not] see [defendant] as solely a getaway driver; [it saw] him as something much more. . . . He wasn't only . . . actively involved in the planning of the crime as the Court of Appeal said. He was there when it happened. He blocked the [victims'] car in. He was in a position to aid the victims if he wanted to, which he didn't, and he said, get the shotgun."

Then, in response to the trial court's invitation to "have the last word . . . ," defendant's counsel stated, "I concede the [appellate] opinion is part of the record, but I don't believe that it should form the bulk of the evidence that this court should rely upon for the simple reason that any appellate opinion is the

product of an analysis which is reviewed in the light most favorable to the verdict and that everything that the Court of Appeal crafted was done in a way to be very deferential to [the trial court's decision]. Therefore, I believe the [appellate] opinion should be viewed with caution as it's essentially a pro-verdict analysis. [¶] Having issued the order to show cause, the court should hold [the prosecutor] to the burden of proving beyond a reasonable doubt that [defendant] is ineligible for [resentencing], and I don't believe he's done that."

The prosecutor responded by asserting that the appellate opinion was part of the record and could be relied upon by the trial court. The court then explained, "The reason I cite the [appellate] opinion, I don't see it as evidence. It's [the appellate court's] interpretation of the record of conviction. My point is, if [the court] found that in the record of conviction, [it was] the most familiar, . . . [it was] doing [its] job right, and we're going to assume that [it did]. [The appellate court] can only rely on what's in the record. So . . . that was that point." [¶] . . . [¶] So the fact that the Court of Appeal found that there was enough evidence in the record to support the conviction . . . I think supports the position that there's sufficient evidence beyond a reasonable doubt that [defendant] could have been convicted [of felony murder under the Senate Bill No. 1437 (SB 1437) amendments to sections 188 and 189]." The court therefore denied the petition.

## IV.   DISCUSSION

Defendant contends that the Senate Bill No. 775 (SB 775) amendments to section 1172.6 apply retroactively[4] and precluded the consideration of facts recited in the appellate opinion in determining whether defendant was eligible for resentencing. According to defendant, because the trial court relied exclusively on the facts stated in that opinion, without independently reviewing the testimony from the trial record of the convictions,[5] its denial of defendant's petition must be reversed and remanded for a new evidentiary hearing in compliance with amended section 1172.6, subdivision (d)(3).

### A.   *SB 775*

October 5, 2021, the Governor signed SB 775, which became effective January 1, 2022, and amended certain portions of section 1172.6.  (Sen. Bill No. 775 (2020–2021 Reg. Sess.)

---

[4]   The Attorney General concedes that retroactivity is not an issue on appeal.

[5]   The Attorney General contends that the trial record of defendant's underlying conviction was before the trial court at the order to show cause hearing and therefore moves to augment the record on appeal with portions of it.  Defendant disputes that the trial record was submitted to or considered by the court at the hearing and therefore opposes the motion.  We need not resolve the dispute because, on our own motion, we have taken judicial notice of the record in defendant's initial appeal, which was submitted by the Attorney General.  The motion to augment is therefore denied as moot.

Section 1 of SB 775 sets forth the nature and purpose of the amendments as follows: "SECTION 1. [¶] The Legislature finds and declares that this legislation does all of the following:

"(a) Clarifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.

"(b) Codifies the holdings of [*People v. Lewis*] (2021) 11 Cal.5th 952, 961–970 [(*Lewis*)], regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case.

"(c) Reaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt.

"(d) Addresses what evidence a court may consider at a resentencing hearing (clarifying the discussion in [*Lewis, supra*], [11 Cal.5th] at pp. 970–972)." (Stats. 2021, ch. 551, § 1.)

Pursuant to the amendments to section 1172.6 concerning the evidence a court may consider at a resentencing hearing, subdivision (d)(3) now provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially

9

noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."

B.    *Harmless Error*

The Attorney General argues that, even assuming the trial court erred in relying on the facts recited in the appellate opinion rather than the underlying trial record, any such error is harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836. According to the Attorney General, because "the [appellate] opinion did not describe the trial testimony in an inaccurate manner," "it is not reasonably probable that the court would have granted the petition but for the admission of [the facts from the appellate opinion]."

Defendant does not dispute that the appellate recitation of facts is accurate; he instead complains that such opinions "generally begin with a statement of facts in the light most

10

favorable to the prosecution." And, he maintains that the claimed error was not harmless because without the submission of the trial transcripts, there was no evidence for the trial court to consider. We agree with the Attorney General.

Where, as here, (1) there is no dispute that the facts described in the appellate opinion accurately reflect the evidence at trial; (2) there is no contention that the transcript of the trial testimony would be inadmissible under current law; and (3) neither party introduces new evidence at the section 1172.6, subdivision (d) hearing, we conclude that the trial court's assumed error in relying on the appellate opinion rather than the underlying trial record was harmless—that is, there is no "'reasonable probability that in the absence of the error [defendant] would have obtained a more favorable result.'" (*Lewis, supra*, 11 Cal.5th at p. 974.)

Moreover, here, we have conducted our own review of the trial evidence and, as discussed below, conclude there was sufficient evidence to demonstrate, beyond a reasonable doubt, that defendant was not entitled to resentencing. Therefore, it is not reasonably probable that defendant would have obtained a more favorable result had the court independently reviewed the trial record.

C.      *Evidence of* Banks/Clark *Factors*[6]

We next consider defendant's argument that there was insufficient evidence to demonstrate that he was a major participant who acted with reckless indifference to life.

---

[6]      *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

11

1.      Major Participant

In determining whether the defendant was a major participant in the underlying felony, "the ultimate question [is] whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]." (*Banks, supra*, 61 Cal.4th at p. 803.)  Among the relevant factors are the following: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Ibid.*, fn. omitted.)

The trial evidence supports the trial court's finding that defendant was a major participant in the robbery.  Defendant accepted Douchette's offer to make some money and then met with Tripp, who explained in detail how the robbery could be successfully executed.  Because defendant had access to the car he had stolen, he volunteered to drive Douchette to the crime scene and to be the getaway driver knowing that throughout Douchette would be armed.

Although defendant did not supply the weapon that would be used in the robbery, he was aware that Douchette would be armed with a handgun and tacitly agreed to its use in carrying out the robbery.

12

Given his awareness that Douchette would use the handgun, that victim Ross should be frightened by it, and that Ross could have a shotgun, defendant knew or should have known of the dangers posed by the plan.  Moreover, Tripp told defendant and Douchette that victim Chapman was a "snitch[]," cautioned that he could try to "be a hero," and implicitly acknowledged the risk that he could be murdered, saying that he "[didn't] care what [they did] with him."  Thus, even if defendant did not have specific knowledge of Douchette's propensity for violence, the known circumstances of the planned crime put him on notice that it was a potentially deadly enterprise.

Moreover, defendant was present at the scene of the robbery, having driven Douchette to 90th and Vermont.  He blocked the victims' most effective means of escape and made it possible for Douchette to exit the stolen car, approach victim Ross's truck, and demand the money at gunpoint.

### 2. Reckless Indifference

In determining whether the defendant exhibited """"reckless indifference to human life"""". . . we consider the specific facts of [the] case in light of some of the case-specific factors that this court and other state appellate courts have considered in upholding a determination of reckless indifference to human life in cases involving nonshooter aiders and abettors to commercial armed robbery felony murders.  . . .  '[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' (*Banks, supra*, 61 Cal.4th at p. 803.)" (*Clark, supra*, 63 Cal.4th at p. 618.)  These factors include:  (1) knowledge, use, and number of weapons; (2) physical presence at the crime and

opportunity to aid the victim; (3) the duration of the felony; (4) the defendant's knowledge of the likelihood of killing; and (5) the defendant's efforts to minimize the risk of violence during the felony. (*Id.* at pp. 618–622.)

The trial evidence supports the trial court's finding that defendant acted with reckless indifference to human life. As we discuss above, defendant knew and agreed that Douchette would be armed with a handgun which he would use to scare victim Ross into giving up the money. Tripp told defendant and Douchette that victim Chapman was a snitch and that Tripp did not care what happened to him if he tried to be "a hero." Defendant was present at the scene. And, after the shooting, defendant did not attempt to render aid to the victims or call for emergency personnel. Instead, he backed his car up to a position parallel to the victims' truck and directed Douchette to take victim Ross's shotgun. He then fled the scene with Douchette, without regard for the circumstances in which he was leaving the victims. Once safely away from the scene, he paused to divide up the proceeds of the robbery, but again, made no effort to assist the victims.

While the duration of the crime was not long, during its commission defendant used his car to block the truck's primary escape route, making the victims vulnerable to Douchette's armed assault, and he then paused before fleeing to make sure that Douchette also stole the shotgun. Finally, there is nothing in the appellate opinion or trial record to suggest that defendant was specifically aware of Douchette's propensity for violence, but he was well aware that Douchette would be armed with a handgun to use in the robbery and, through Tripp, that victim Chapman could attempt to disrupt the robbery and be injured in

14

the process.  Yet he took no steps to minimize the risk that either of the victims could be hurt, agreeing instead to participate in the robbery as suggested by Tripp and planned by him and Douchette.

Finally, we disagree with defendant's contention that defendant's age—he was 21 at the time of his crime—prevented him from appreciating the consequences of his planned actions and therefore established that he was not a major participant who acted with reckless indifference to human life.  Defendant does not cite to any facts in the record that demonstrate he was too young to appreciate the grave risk to life posed by the robbery plan to which he agreed and in which he willingly participated.  And, the probation report in the record suggests otherwise.  According to that report, he committed his first offense when he was 14 and then proceeded to commit several other felonies—including two assaults with deadly weapons—prior to agreeing to a plan which he knew involved the use of a deadly weapon and during which he maneuvered his car to prevent the victim from escaping and directed the shooter to take a shotgun before escaping from the scene.

## V.    DISPOSITION

The order denying the section 1172.6 petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

16